# THOMAS HOLDEN, Appellant, v. FRED S. CHAMBERLIN, Respondent.

## (179 N. W. 706.)

**Bankruptcy — evidence held not to show a new promise after adjudication reviving the debt.**

> Plaintiff brought an action to recover upon a debt discharged in bankruptcy, on the theory that a new promise of payment, by the debtor, after the ad-

---

NOTE.—The question of the effect of an expression of hope or expectation as a new promise which will revive a debt after the discharge in bankruptcy has arisen in a very few instances, but in connection with this question it may be stated that in many instances the rules applicable to the tolling of a statute of limitation may be applied, as will be found by an examination of the cases collated in a note in 38 L.R.A.(N.S.) 577, on expression of hope or expectation as a new promise

46 N. D.—23.

judication, had revived the same. The case was tried to a jury, and, after the evidence was submitted, the court directed a verdict in favor of the defendant, on the ground that there was no evidence showing a new promise.

It is *held*, for reasons stated in the opinion, that the court, in directing a verdict, was not in error.

Opinion filed October 14, 1920.

'Appeal from a judgment of the District Court of Ramsey County, *C. W. Buttz*, J.

Judgment affirmed.

*Cuthbert, Smythe, & Wheeler*, for appellant.

The court erred in granting defendant's motion for a directed verdict. Torrey v. Krauss, 149 Ala. 200, 43 So. 184, 146 Ala. 548, 40 So. 956; Ekler v. Galbraith, 12 Bush, 71; Bradner v. Stern, 225 Ill. 430, 80 N. E. 307; International Harv. Co. v. Lyman, 90 Minn. 275, 96 N. W. 87; Smith v. Stensfield, 84 Minn. 343.

*T. R. Stevens* and *Rollo F. Hunt,* for respondent.

A debt discharged is not a debt paid. The moral obligation remains, and is a sufficient consideration for a new promise to pay. Collier, Bankr. 11th ed. p. 499.

In order to constitute a new promise there must be a clear, distinct, and unequivocal recognition and renewal of the debt as a binding obligation, but it is not necessary that the new promise should be in writing, except where this is required by state statute. Bankruptcy in 7 C. J. p. 412.

The promise must be clear, distinct, unequivocal, such as to indicate on the part of the debtor a clear intention to bind himself to the payment of the debt, and it may be a question for the jury whether the words used were efficacious to that extent. 3 R. C. L. § 147.

There is a distinction between reviving a debt barred by the Statute of Limitations and a debt discharged in bankruptcy. Scheper v. Briggs, 28 App. Div. 115, 50 N. Y. Supp. 869; 38 L.R.A.(N.S.) 581; Stern v. Bradner, S. & Co. (Ill.) 80 N. E. 307; Brandenburg, Bankr. 3d ed. 391; Smith v. Stanchfield, 84 Minn. 343, 87 N. W. 917.

which will toll the Statute of Limitations or revive debt after discharge in bankruptcy.

On the question as to what promise, acknowledgment, or payment takes case out of Statute of Limitations, see note in 6 L. ed. U. S. 481.

It is well settled under the authorities that a mere expression of an expectation of a hope to pay a debt discharged in bankruptcy, or a mere acknowledgment of it, is not sufficient to remove the bar of the discharge of bankruptcy. Coe v. Rosene, 66 Wash. 73, 38 L.R.A. (N.S.) 577, 118 Pac. 881; Torrey v. Krauss, 149 Ala. 200, 43 So. 184; 146 Ala. 548, 40 So. 956; Ekler v. Galbraith, 12 Bush, 71.

GRACE, J. This appeal is one from a judgment entered upon a directed verdict.

The material and controlling facts are as follows:

During the years 1904 to 1913 or 1914, defendant was engaged in general merchandising, at Doyon, Ramsey county, North Dakota. He had been acquainted with the plaintiff for twenty-seven years.

In the month of June, 1913, the defendant applied to the plaintiff for a loan of $1,000. The plaintiff made the loan, and, as evidence thereof, the defendant executed and delivered to the plaintiff his promissory note for $1,000, dated July 3, 1913, due January 1, 1914, with interest before and after maturity, at the rate of 10 per cent per annum.

In April, 1914, the defendant was adjudged a bankrupt in an involuntary bankruptcy proceeding, in and by the district court of the United States for the district of North Dakota. During the course of the trial, the following stipulation was made by the parties: "It is hereby stipulated by and between the parties to this action that, on or about the 3d day of April, 1914, the defendant, F. S. Chamberlin, was adjudged a bankrupt in an involuntary bankruptcy proceeding, in and by the district court of the United States for the district of North Dakota; and that the note sued upon in this case was filed, as a claim against the bankrupt estate of said F. S. Chamberlin, in said bankruptcy proceeding, and was allowed therein; and that such proceedings have been had in said bankruptcy, whereby the defendant, F. S. Chamberlin, has been in said court discharged from all of his debts listed in that proceeding, including the note in court; and that, at this time, the plaintiff relies upon a new promise to pay the defendant, which new promise is denied by the defendant.

It is agreed that, in such bankruptcy proceeding, there was paid to the plaintiff, by the trustees in bankruptcy, as dividends, the sum of

$50.40, on November 2, 1914, and the further sum of $58.56 on June 21, 1915, and that this amount was indorsed upon and allowed on this note, together with other indorsements, amounting to $67.

The plaintiff brought this suit upon the note, the complaint being in the ordinary and usual form in such case. Among other defenses, the defendant alleged that on the 3d day of April, 1914, he was adjudged a bankrupt, and that on the 10th day of April, the note was duly proved and filed as a claim against his estate, in that proceeding; and that he turned over all his assets, both real and personal, to the trustee in bankruptcy; and further alleges the receipt, by the plaintiff, of the dividends above mentioned. He also alleges that any claim of plaintiff, based upon the notes, has been extinguished.

The plaintiff claims that after defendant was adjudicated a bankrupt, he made new promises, orally, to pay the debt. The defendant's contention is that he made no new promise of a definite and certain character.

The new promise, if any, centers around a conversation had between plaintiff and defendant, in defendant's office in Crary, North Dakota, in June, 1916.

The substance of the conversation, as the evidence discloses it, may be summed up in a very few sentences. Chamberlin's testimony shows that he told Holden that when he was *able*, he would pay the debt, or, if he *could* pay the debt, he would do so. He told Holden that he considered it a personal debt, and that, as soon as *could*, he would pay it.

The plaintiff, in the month of July, 1916, had the defendant arrested for obtaining money under false pretenses. At the present trial, the defendant was asked if he did not give certain testimony in the preliminary hearing, which was quoted to him as follows:

"You told Mr. Holden, at that time, that you would pay him whether the bankruptcy paid out or not." Answer: "I surely did, and Mrs. Chamberlin told him, also."

The defendant did not know whether that question was asked him or not; he would not swear that he did not so testify. He said, "I would have to take this evidence." The plaintiff claims this statement, when originally made, was a new promise to pay the debt.

If the defendant ever made the statement included in the question and answer just above set forth, we do not think there is any compe-

tent evidence of it in this record. We do not find that that part of the record, in the criminal case where such evidence was given, is offered as evidence in this case; and, if it were, we do not see how it could be for any other purpose, excepting to affect the credibility of the defendant. That case, too, was between different parties; that is, the state of North Dakota against the defendant Chamberlin. The question and answer above is no evidence of a new promise, and no further attention need be given to plaintiff's contention in this regard, as it is wholly without any merit.

The plaintiff claims that, during the conversation at Crary, the defendant said: "I will pay you. I calculate to pay you, and I will pay it. I could pay you two or three hundred dollars this fall, and that much a year from now, and in three years' time I may clean it all up."

It appears, however, that Mr. Holden, at the time of that conversation, made an offer to the defendant to give him three or five years to pay the balance, if he would give a note, with an indorser.

The plaintiff, in answer to the court, said: "Well, he made this offer, and I made him a proposition to give him three or five years, with an indorser, but that he would not do."

The propositions made by defendant to the plaintiff and by plaintiff to defendant were conditional, and all were unaccepted; those of the plaintiff were latest made. It was shortly after this conversation that plaintiff made out a complaint charging defendant with obtaining money under false pretenses.

The appellant has assigned seven errors, and in addition thereto, the insufficiency of the evidence to sustain the verdict, pointing out what is claimed to be the insufficiency of the evidence.

The first four errors assigned relate to the overruling of plaintiff's objections to certain evidence offered by the defendant; it is held that the court was not in error in overruling the objections.

The fifth and sixth errors assigned relate to evidence which had reference to the swearing out of the warrant by the plaintiff against the defendant, for obtaining money under false pretenses.

The defendant stated the only purpose of introducing such testimony was to show that he and the plaintiff parted without an agreement, at their conversation in Crary, 1916. The court held that, for

that purpose, it would admit the testimony. In this regard, we do not think the court committed any error. If the testimony had been admitted for any other purpose, a different question might arise. But the only real question in this case being whether defendant made a new promise, the swearing out of the warrant shortly after the meeting in 1916, at Crary, and the conversation had there between the parties, was some evidence that there was no new promise to pay the debt.

The court was not in error in directing a verdict for defendant. The evidence clearly shows there was no new promise to revive the debt. The propositions made by each to the other, the plaintiff making the latest, were conditional, and all remained unaccepted and refused.

The jury could not find a new promise was made, unless there was competent evidence to support such finding, and there is no such evidence in this record.

If the evidence had been submitted to the jury, and it had returned a verdict in favor of plaintiff, the court, upon application, or of its own motion, would necessarily have to set such verdict aside, it being entirely unsupported by any competent or substantial evidence. The directed verdict is amply supported by the evidence.

It is true that a debt discharged in bankruptcy is not, in fact, paid. The debtor is relieved from the payment of it, but his moral obligation remains unsatisfied, and is a sufficient consideration to support a promise to revive and pay the debt.

The promise is sufficient, whether it be made orally or in writing, if it be definite, certain, and free from ambiguity; or if the promise or offer of payment by the debtor be conditional, the condition must be pleaded by the creditor, and he must show, by competent evidence, that the condition has been performed.

"Thus, a promise to pay as soon as the bankrupt is able, is a valid one, and not void for uncertainty; but to be available, the promise must be averred in proper form, and satisfactory proof adduced of the defendant's ability to pay,—that is, of the fact that he has sufficient property or means to pay." 3 R. C. L. § 147; International Harvester Co. v. Lyman, 90 Minn. 275, 96 N. W. 87. The plaintiff has wholly failed in this case to comply with these requirements.

To remove the bar of the discharge of the debt in bankruptcy, by a new promise, the evidence to prove it must be clear and convincing,

and must show that it was certain and unambiguous. Mere expressions of an expectation and desire, or a hope to pay a debt discharged in bankruptcy, is not a new promise. 7 C. J. 412.

The writer, speaking for himself, is of the opinion that a debt or obligation discharged in bankruptcy, while not paid, is wholly extinguished, so far as any future legal liability upon it is concerned; that the debt or obligation no longer exist; that there remains only, after such discharge, the moral obligation to pay the debt; that this moral obligation may, and is, a sufficient consideration for a new contract to pay the debt discharged; that in making such new contract, based upon such moral obligation, the minds of the parties must meet upon all the terms in the same manner and to the same effect as upon any other contract; that is, if a debt for a given amount is discharged in bankruptcy, and the debtor makes a definite promise, after the adjudication, to pay the amount of the debt discharged, stating in such promise certain amounts of the debt to be paid at different times, or promising to pay it all at a certain time, that before a new contract is actually made, which is binding upon both parties, such terms contained in the promise must be accepted by the creditor, and this constitutes a new contract for the amount of the debt,—in other words, a new debt,—the moral obligation to pay the debt discharged being a sufficient consideration for the new contract. 7 C. J. 412, 413. And, in addition to this, if there are conditions attached to the offer, they must be pleaded and a compliance with them established by competent proof.

The judgment appealed from is affirmed. Respondent is entitled to his costs and disbursements on appeal.

ROBINSON and BRONSON, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). The sole question presented for determination in this case is whether the trial court erred in directing a verdict in favor of the defendant. The answer to that question depends upon whether there was any substantial evidence tending to show that the defendant had made a new promise to pay a debt which had been discharged in bankruptcy. Of course if there was any substantial evidence tending to establish such promise, the question wheth-

er such promise was in fact made should have been submitted to the
jury.

There is no question but that a new promise to pay a discharged
debt must in fact be an actual promise. It is not sufficient that the
debtor expresses a hope, desire, or expectation to pay the debt. He
must actually promise to pay it. The promise must be distinct and
unequivocal, such as to indicate on the part of the debtor an intention
to assume an obligation to pay the debt. But it is not necessary that
any particular form of words be used. Where the language used is
susceptible of different meanings, it may be a question for the jury to
determine which is the correct one, and whether the words used did
in fact constitute a new promise. Shaw v. Burney, 86 N. C. 331, 41
Am. Rep. 461; Bennett v. Everett, 3 R. I. 152, 67 Am. Dec. 498;
Pratt v. Russell, 7 Cush. 462. In Shaw v. Burney, supra, the proof
was "that the debtor said: 'The debt is an honest one,—I always in-
tended to pay it;' and that later, when a note was presented to him for
execution in settlement of the debt, he refused to sign the note, claim-
ing that a certain recital therein was untrue, but said: 'It is an hon-
est debt and I will pay it certain.'" The superme court of North
Carolina held that it was a question for the jury to determine whether,
under all the circumstances, the words constituted a new promise.

In Pratt v. Russell, supra, a witness testified that, at plaintiff's re-
quest, he called on defendant, with the accounts between plaintiff and
defendant, and "told the defendant that the plaintiff wanted him to do
something about this note; that she would be glad to have him give her
a new note; that she wanted the old note in such shape that she could
get it some time or other; that the defendant answered that he was not
willing to put the principal and interest into a new note, but said that
he had always said, and still said, that she should have her pay." The
defendant contended that no express or unequivocal promise to pay
the note could be implied from the language of the defendant as testi-
fied to by the witness, and requested that the trial court so instruct
the jury. The trial court denied defendant's request for such instruc-
tion. In submitting the case to the jury the court instructed: That
to entitle the plaintiff to recover, he must prove a distinct and unequiv-
ocal promise to pay the note by the defendant; that no precise form
of words was necessary, but that when words used were relied on as

showing such promise, they must be words capable of meaning or expressing such promise, and must appear to have been used by the party with the intention of making a promise to pay the note; that it was for the jury to say whether the defendant intended, by the words used, to promise to pay the discharged debt. The Massachusetts supreme court held the instructions to be correct. The opinion of the court, which was written by the celebrated Chief Justice Shaw, reads:

"We cannot perceive any objection to the directions given to the jury. Undoubtedly to revive a debt barred by a statute discharge, no express promise is necessary, in contradistinction to a promise implied from an acknowledgment of the existence of the debt. So the judge directed. But the evidence tended to prove two forms of expression used by the defendant, on the same occasion,—one declining to give a written promise, the other amounting to a verbal promise. The words, as he must have used them in the present tense, in answer to a claim of payment to be made by him, 'I have always said, and still say, that she shall have her pay,' are capable of being construed a promise, but might be counteracted by the other expression. It was for the jury to decide upon the credit of the witness, and the accuracy of his recollection, and thus decide what was said."

In the case at bar the defendant Chamberlin testified:

Q. Now Mr. Chamberlin after April, 1914, you have, on repeated occasions, told Mr. Holden that you intended or were going to pay this note?

A. When I could.

Q. Mr. Chamberlin, you say you have since you were adjudicated a bankrupt in 1914 promised Mr. Holden to pay this debt?

A. If I was able to do so.

Q. You have promised to pay this debt, have you not?

A. If I was able to do so; that has always gone in.

Q. Now, Mr. Chamberlin, didn't you tell him at different times after April, 1914, that you intended to pay this debt, and that you had already paid other debts which were provable in bankruptcy and upon which dividends had been paid in bankruptcy?

A. I told Mr. Holden repeatedly that when I was able to pay the debt, or if I could pay it, I would do so. Mr. Holden has been a friend of mine for a number of years. It is too bad he had to lose the

money, I couldn't help it, and in making that promise, if I am able to do so, I intend to carry it out.   I don't know what else I can say.   I told Mr. Holden I considered it a personal debt, and that as soon as I could I would pay it.

The plaintiff, Holden, testified that after defendant had been adjudged a bankrupt he (plaintiff) had a conversation with defendant at defendant's office in Crary, and that in such conversation, defendant said: *"I will pay you; I calculate to pay you, and I will pay it.* I could pay you two or three hundred dollars this fall, and that much a year from now and in three years' time I may clean it all up." The defendant admitted that upon a certain preliminary examination the following question was propounded to, and the following answer given by, him relating to the conversation referred to by the plaintiff:

"Q. You told Mr. Holden at that time that you would pay him whether the bankruptcy paid out or not?"

"A. I surely did, and Mrs. Chamberlin told him also."

It is true that after this conversation was had and this promise given plaintiff sought to induce defendant to give security for the payment of the debt, *i. e.,* give a note signed by some responsible surety; and that defendant refused to comply with this request.   It is not likely that plaintiff would have requested that defendant obtain a surety, unless he was of the belief that defendant had in fact promised to pay the debt.   Plaintiff apparently assumed that defendant had promised or agreed to pay the debt and wanted this promise or agreement secured in the manner which he proposed.   I do not see how the demand for security affected the promise to pay, if a promise was in fact previously made. It will be noted that in Shaw v. Burney, 86 N. C. 331, 41 Am. Rep. 461, and Pratt v. Russell, 7 Cush. 462, also, certain requests made by the creditor were refused.   I do not believe that it can be said as a matter of law that there was no new promise in this case.   See Shaw v. Burney and Pratt v. Russell, supra; Bennett v. Everett, 3 R. I. 152, 67 Am. Dec. 498.   See also Sundling v. Willey, 19 S. D. 293, 103 N. W. 38, 9 Ann. Cas. 644.

BIRDZELL, J., concurs.